# JOINT PROPOSED STANDARD JURY INSTRUCTIONS

## INSTRUCTION #1

### INTRODUCTION

Ladies and Gentlemen of the Jury, this civil case, during which you have seen and heard all of the evidence and heard the closing arguments of counsel, now approaches its final phase, when you will be required to enter upon your deliberations and to return your verdict.

Before you retire, however, it is my duty to instruct you on certain principles of law which you must follow in the discharge of your obligations as jurors.

Before doing so, the court wishes to express its sincere appreciation for the services that you have rendered as jurors in discharging one of your most important duties as citizens.

Each of you has made a considerable sacrifice. You have been most attentive, cooperative and patient to counsel and to the court. For all of this we are grateful.

I have supplied an index and captions to these instructions for your assistance in deliberations. The page referred to in the index is where a particular instruction basically begins. The words in the index and captions are not part of my instructions on the law, nor should they suggest to you any decision which you might

reach.  Furthermore, do not let the use of the index or the captions sidetrack you from your obligations to consider my instructions as a whole.

## INSTRUCTION #2

## CONSIDERATION OF INSTRUCTION AS A WHOLE

You are to consider these instructions as a whole. It is of course impossible to give all of the instructions to you instantly. It's like describing a house; you must start with a description of the front door before you describe the roof. But you don't have a description of the house until you put everything together.

Therefore, each part or phase of the instructions is to be considered and applied together with all other parts and phases of the instructions. In other words, you must not pick out some particular instruction or some particular portion of an instruction and overemphasize it and apply it without considering and keeping in mind all of the other instructions given to you as the whole law of the case. Your duty in the case is to determine the facts from the evidence. Therefore, you are to consider and determine the facts in accordance with these instructions.

## INSTRUCTION #3

### FUNCTION OF JUDGE AND JURY

In the trial of a case, a function of the court is to instruct the jury as to the principles of law that govern that case.  The jury is required to accept and apply the law as stated by the judge.  You are to disregard any characterization of what the law is that counsel may have stated during this trial.  You are not to be concerned with the wisdom of any opinion that you may have as to what the law ought to be.  It would be a violation of your sworn duty to base a verdict upon any other view of the law than that given to you in these instructions.

On the other hand, it is the function of you, the jury, to determine the facts of the case.  You are the sole judges of what actually occurred in this case.  You are to weigh the testimony of the witnesses, assess their credibility, and draw inferences from their testimony in arriving at your ultimate conclusions as to what the facts are.

Although I, as the judge, may comment on the evidence or state my recollection of the testimony, I want to make it clear that any comment about the facts is not binding on you in any way.  It is exclusively the function of the jury to decide the facts.  In doing so, you must rely on your own recollection and must disregard any comments of counsel or comments of mine to the extent that they differ from your recollection of the facts.

## INSTRUCTION #4

## BIAS AND SYMPATHY

Under the law, you may not be governed by bias, prejudice, sympathy, sentiment or public opinion.  The parties and the public expect that you will carefully and impartially consider all of the evidence, follow the law as I have stated it to you, and reach, to the best of your ability, a just verdict.

This case should be considered and decided by you as an action between persons of equal standing in the community, and holding the same or similar stations in life.  A corporation is entitled to the same fair trial at your hands as is a private individual.  All persons, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.

## INSTRUCTION #5

### EVIDENCE

The evidence from which you are to decide what the facts are consists of (1) the sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness; (2) the exhibits which have been received into evidence; and (3) any fact to which all the lawyers have agreed or stipulated.

## INSTRUCTION #5A

### DEPOSITIONS

Some of the testimony before you is in the form of depositions which have been received into evidence.

A deposition is simply a procedure where the attorneys for one party questions a witness or another party under oath before a court stenographer prior to trial.

This is part of pretrial discovery, and each side is entitled to take depositions.

You may consider the testimony of a witness given at a deposition according to the same standards that you would use to evaluate the trial testimony of that witness.

**INSTRUCTION #5B**

**INTERROGATORIES**

You have heard and seen evidence in this case which is in the form of interrogatories.

Interrogatories are written questions posed by one side which call for written answers under oath from the other side.  Both the questions and answers are made prior to trial after the case has begun.  That phase of the case is called pretrial discovery and each side is entitled to seek discovery from the other.

You may consider a party's answers to interrogatories as evidence against the party who made the answer, just as you would any other evidence which has been admitted in this case.

**INSTRUCTION #5C**

**STIPULATION OF FACTS**

You have heard that the attorney for the plaintiff and the attorney for the defendant have entered into stipulations about certain facts in this case.

A stipulation is an agreement between counsel that a fact or condition exists or existed.

When a stipulation is entered, you must, unless otherwise instructed by the court, accept it as evidence and regard that fact as proved.

## INSTRUCTION #6

## WHAT IS EVIDENCE

In reaching your verdict you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence and you may not consider them in deciding what the facts are.  I will list them for you.

1.    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.    Testimony that has been excluded is not evidence and must not be considered.  In addition, if testimony or exhibits have been received only for a limited purpose, you must follow the limiting instructions I have given you.

4.    Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## INSTRUCTION #7

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence from which a jury may find the truth as to the facts of a case -- direct and circumstantial evidence.

"Direct evidence" is testimony of any eyewitness who asserts actual knowledge of a fact: what he saw, heard or observed; what he knows of his own knowledge -- something which the witness has observed by virtue of his senses.

"Circumstantial evidence" is evidence of surrounding circumstances from which you may conclude that an event has occurred. For example: you are walking along a sidewalk when you hear a squeal of tires on the roadway behind you. You turn around and notice fresh tire skidmarks behind a car which is stopped near you. Even though you did not see the car stop, you may properly conclude from the surrounding circumstances (the tires' squeal and the skidmarks behind the stopped car) that the car has just skidded to a stop.

The law makes no distinction between direct and circumstantial evidence. Either kind or both kinds of evidence can be used.

## INSTRUCTION #8

### INFERENCES FROM EVIDENCE

You are to consider only the evidence in this case. But this does not mean that you are limited to the bald statements of the witnesses or the bald appearance of a particular exhibit. On the contrary, you are permitted to draw from the facts that you find to have been proved such reasonable inferences as seem justified to you in light of your own experience, common sense and the common knowledge and experience of mankind.

Inferences are deductions or conclusions that reason and common sense lead the jury to draw from facts that have been established by the evidence in the case.

## INSTRUCTION #9

### RULINGS ON OBJECTIONS

During the course of this trial, you saw counsel make various objections to questions asked and evidence offered. Since trials proceed under various evidence rules, it is the right and duty of the attorneys to object under certain circumstances in order to insure that a fair trial is conducted.

Likewise, you saw and heard the court rule on such motions, which is the duty entrusted to the court by law.

These objections and rulings must not be considered by you at all in determining the facts of this case.  You are directed not to be influenced in any way by any ruling in favor of, or against, any party before this court.

**INSTRUCTION #10**

**SIDEBAR CONFERENCES**

Occasionally during this trial you saw counsel confer with the court at what we call sidebar.  These conferences between the court and counsel concern legal questions on which I have ruled.  All of these conferences pertain solely to legal phases of the case and do not concern your function as jurors.  You should not speculate on such matters in your deliberations.

## INSTRUCTION #11

## CREDIBILITY OF WITNESSES

In deciding what the facts are, you must consider all the evidence.  In doing this, you must decide which testimony to believe and which testimony not to believe.  You may believe or disbelieve all or any part of any witness' testimony.  In making that decision, you may take into account a number of factors including the following:

1.   Was the witness able to see, or hear, or know the things about which that witness testified?

2.   How well was the witness able to recall and describe those things?

3.   What was the witness' manner while testifying?

4.   Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

5.   How reasonable was the witness' testimony considered in light of all the evidence in the case?

6.   Was the witness' testimony contradicted by what that witness has said or done at another time, or by the testimony of other witnesses, or by other evidence?

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things.  You need to consider therefore whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.  These are some of the factors

you may consider in deciding whether to believe the testimony.

You may accept the testimony of a single witness as proof of any fact just as long as it produces in your mind a belief in the likelihood of its truth. You may find a verdict in accordance with the testimony even though a number of witnesses may have testified to the contrary if, after fully considering all of the evidence, you hold greater belief in the accuracy and honesty of the one witness.

It is your exclusive function to determine the persuasive value or weight to be given the testimony of any witness you have heard.

Each of you is a judge in this case. Collectively you are the sole judges of the facts.

## INSTRUCTION #12

### NUMBER OF WITNESSES

The number of witnesses produced by one side or the other should not, in and of itself, determine which evidence you will credit or discredit.

What I am trying to say in this regard, ladies and gentlemen, is that the test is not which side brings in the greater number of witnesses or presents the greater quantity of evidence, but which witness and which evidence appeals to your minds as being most accurate and otherwise trustworthy, regardless of who has produced that witness or that evidence.

## INSTRUCTION #13

### BURDEN OF PROOF

[In a civil action such as this], The burden is on the plaintiff ~~in a civil action, such as this,~~ to prove every essential element of its claims by a preponderance of the evidence, including damages.  If the proof should fail to establish any essential element of the plaintiff's claim by a preponderance of the evidence in the case, the jury should find for the defendant as to that claim.

By the term "preponderance of the evidence" I mean the greater weight of credible evidence in the case.  It does not necessarily mean the evidence of the greater number of witnesses, but means that evidence which carries the greater convincing power to your minds.

To "establish by preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.  This rule does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case. To put it differently, if you were to put the plaintiff's and the defendant's evidence on opposite sides of the scales, the plaintiff would have to make the scales tip somewhat on his/her side.  If the plaintiff fails to meet

this burden [on its claims], the verdict must be for the
defendant.  [If the plaintiff meets this burden, the
verdict must be for the plaintiff.]

In determining whether any fact in issue has been
proved by a preponderance of the evidence in the case, the
jurors may, unless otherwise instructed, consider the
testimony of all witnesses, regardless of who may have
called them, and all exhibits received in evidence,
regardless of who may have produced them.

**INSTRUCTION #14**

**IMPEACHMENT BY WITNESSES' INCONSISTENT STATEMENTS**

**(FALSE IN ONE - FALSE IN ALL)**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or to do something, that was different from the testimony he or she gave at the trial.

If a witness is shown to have knowingly testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars, and you may, in your discretion, reject some or all of the testimony of that witness, or give it such credibility as you think it deserves.

Remember my previous instruction: In deciding whether or not to believe a witness, keep in mind that people sometimes forget things.  You need to consider therefore whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

**INSTRUCTION #14 (Short Version)**

**(FALSE IN ONE - FALSE IN ALL)**

If you believe that any witness deliberately lied to you on any material fact that is significant to your decision in this case, you have the right to reject all of that witness's testimony.  However, in your discretion you may believe some of the testimony and not believe other parts of the testimony.

## INSTRUCTION #15

### SUMMARY CHARTS

Certain charts or summaries have been prepared, admitted into evidence, and have been shown to you during the trial for the purpose of explaining facts that are contained in books, records, other documents, and perhaps testimony, which are evidence in this case.  You may consider the charts and summaries as you would any other evidence admitted during the trial and give it such weight or importance, if any, as you feel it deserves.

## INSTRUCTION #16

### USE OF NOTES TAKEN BY JURORS

Any notes that you have taken during this trial are only aids to your memory.  If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence.

If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.

Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

## INSTRUCTION #17

### JURY QUESTIONS

Upon your return to the jury room, the first thing you should do is choose a foreperson to preside over deliberations and speak for you in court.  If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your foreperson.  No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.  Remember that you are not to tell anyone -- including me -- how the jury stands, numerically or otherwise, until after you have reached a verdict or have been discharged.

Your verdict must represent the considered judgment of each juror, and it must be unanimous; that is, each juror must agree to each of your answers.  When you have reached unanimous agreement, your foreperson will fill in the verdict form, date and sign it, and then you will return to the courtroom.

Remember at all times that you are not partisans.  You are judges -- judges of the facts.  Your sole interest is to seek the truth from the evidence in this case.

## INSTRUCTION #18

### INSTRUCTION AS TO VERDICT FORM

I have just described to you the various concepts with which you are going to have to deal in deciding the current case.

To assist you in reaching a verdict, you will have with you in the jury room a verdict form consisting of questions calling for certain answers.  This verdict form does not constitute evidence.

Nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

**INSTRUCTION #19 (Limited to Appropriate Case)**

**DAMAGES (COMPENSATORY - PI)**

A plaintiff who sustains injuries as a result of the improper conduct of another is entitled to recover fair and reasonable money damages for the full extent of the harm caused. The law recognizes as proper items for recovery, the pain, physical and mental suffering, discomfort, distress and disability that a person may endure as a natural consequence of such injury. The measure of damages is what a reasonable person would consider to be adequate and just under all the circumstances to compensate the plaintiff, no more and no less.

You may consider plaintiff's age, usual activities, occupation, family responsibilities and similar relevant factors in evaluating the probable consequences of any injuries you find the plaintiff has suffered. You are to consider the nature, character and seriousness of any injury, or impairment. You must also consider their extent or duration, as any award you make must cover the damages suffered by the plaintiff since the defendant's improper conduct began, to the present time, and even into the future if you find as fact that the proofs presented justify the conclusion that plaintiff's injury and its consequences have continued to the present time or can reasonably be expected to continue into the future.

The law does not provide you with any table, schedule or formula by which a person's pain and suffering may be

measured in terms of money.  The amount is left to your
sound discretion.  It is not an arbitrary power left to you,
but rather the mechanism by which you are to attempt to make
the plaintiff whole, so far as money can do so, based upon
reason and sound judgment, without any passion, prejudice,
bias or sympathy.  You each know from your common experience
the nature of pain and suffering, and you also know the
nature and function of money.  The task of equating the two
so as to arrive at a just and fair award of damages is one
which requires a high order of human judgment.  For this
reason, the law can provide no better yardstick for your
guidance than your own enlightened and impartial conscience.
You are to exercise sound judgment as to what is fair, just
and reasonable under all the circumstances.  In this
undertaking, you should scrutinize all the evidence
presented by both parties on this subject.  Then, having
given weight and consideration to each of the factors
presented, to the extent that you feel such weight and
consideration is merited, you may arrive at a judgment which
fixes the amount of money plaintiff shall receive in
compensation for the total extent of his/her injuries.

_____

**INSTRUCTION #19**

**EFFECT OF INSTRUCTION AS TO DAMAGES**

The fact that I have instructed you as to the proper measure of damages should not be considered as intimating any view of mine as to what your verdict should be in this case.  Instructions as to the measure of damages are given solely for your guidance.

**JOINT PROPOSED NON-STANDARD JURY INSTRUCTIONS**

**INSTRUCTION #1**

**Nature of the Action**

This is an action for trademark infringement [and unfair competition]. Subject to certain defenses, a trademark owner may enforce the right to exclude others from using ~~the~~ [its] trademark or ~~similar words~~ [words that are so similar to its trademark that they are likely to cause confusion in the marketplace]. ~~A person may acquire the right to exclude others from using a trademark by being the first to use it in the marketplace. Rights in a trademark are obtained only through commercial use of the trademark. The owner of a trademark has the right to exclude others unless the trademark has been abandoned.~~

In this action, [the parties agree that] plaintiff Sabinsa [owns a valid trademark for the mark FORSLEAN for use in connection with forskolin, a natural extract of the plant root *coleus forskohlii*. Sabinsa seeks to prevent defendant Creative Compounds from using the trademark FORSTHIN in connection with forskolin. Sabinsa also] seeks damages from defendant Creative Compounds for trademark infringement [and unfair competition].

Defendant Creative Compounds denies ~~infringing the trademark~~ [that its use of FORSTHIN infringes plaintiff's trademark rights or constitutes unfair competition.] ~~and contends that the trademark is invalid because [describe reason].~~

O'Malley, Grenig & Lee, 3A Federal Jury Practice and Instructions § 159.01 (5th ed. 2001).

## INSTRUCTION #2

### Definition of a Trademark

A trademark is a word, a name, a symbol, a device, or a combination of [any of those things]~~them~~ that indicates the source of goods or services.  ~~The [*owner*] [*assignee*] [*licensee*] of a trademark has the right to exclude others from using that trademark subject to certain defenses.~~

O'Malley, Grenig & Lee, 3A Federal Jury Practice and Instructions § 159.41 (5th ed. 2001).

**INSTRUCTION #3**

**Right to Exclusive Use**

When a manufacturer or seller has established a trademark by use on or in association with a product before anyone else, subject to certain defenses, the right to use the trademark becomes an exclusive right and the mark is that person's property.  With certain exceptions, no other person can use the same or similar words, symbols, designs, or devices in any manner that is likely to cause confusion, mistake or deception.


O'Malley, Grenig & Lee, 3A Federal Jury Practice and Instructions § 159.29 (5th ed. 2001); *see also Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311 (3d Cir. 1999)("It is a well-established principle of trademark law that the exclusive right to a distinctive mark belongs to the party which first uses the mark in connection with its particular line of business"); *Presley's Estate v. Russen*, 513 F. Supp. 1339, 1365 (D.N.J. 1981) (same); *Smith v. Ames Dep't Stores, Inc.*, 988 F. Supp. 827, 837 (D.N.J. 1997) (recognizing that a trademark owner's right to use a mark is exclusive).

<u>**INSTRUCTION #4**</u>

**<u>Infringement of a Registered Trademark</u>**

With certain exceptions, a registered trademark is infringed when a person uses it or a phrase similar to it in a manner likely to cause confusion, mistake, or deception among ordinary purchasers as to the source of the product.  The test is not one of actual confusion, mistake, or deception.  Rather, plaintiff is required to prove a likelihood of confusion, mistake, or deception.

In order to establish trademark infringement, plaintiff Sabinsa has the burden of proving ~~each of the following~~ by a preponderance of the evidence [that]

~~First:  Plaintiff's trademark has been registered as a trademark on the principal register in the United States Patent and Trademark Office;~~

~~Second:  Plaintiff is the registrant of that trademark; and~~

~~Third:~~ defendant Creative Compounds used Sabinsa's trademark [or a similar word or phrase] without the consent of plaintiff in a manner that is likely to cause confusion among ordinary purchasers [of the type that purchase the parties goods, namely, forskolin].~~as to the source of the goods.~~

O'Malley, Grenig & Lee, 3A Federal Jury Practice and Instructions § 159.20 (5th ed. 2001); 15 U.S.C. § 1114(1); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004) (must show likelihood of confusion for trademark infringement claim); *Jews For Jesus v. Brodsky* 993 F. Supp. 282, 301 (D.N.J. 1998) (to prevail on a claim for infringement, a plaintiff must only show a likelihood of confusion, not proof of actual confusion).

## INSTRUCTION #5

## ORDINARY PURCHASERS

The evaluation of whether there is a likelihood of confusion must be made with respect to ordinary purchasers **[Plaintiff: "or potential purchasers"]** of the parties' goods **[Defendant: ", that is, the types of customers who ordinarily buy forskolin"].**

In this case, the parties agree that the ordinary purchasers of forskolin are manufacturers of nutraceutical products, namely, contract manufacturing facilities, sports nutrition companies, and manufacturers of dietary supplements.  Neither party sells its product directly to individual consumers.

*Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 489 (1st Cir. 1981) (Evaluation of likelihood of confusion "must be based on the confusion of some relevant person; i.e., a customer or purchaser."); *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 194 (1st Cir. 1980); *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 104 F. Supp. 2d 427, 460 (D.N.J. 2000), *aff'd*, 269 F.3d 270 (3d Cir. 2001) (The Lanham Act  "only protects 'against mistaken purchasing decisions and not against confusion generally.'") (quoting *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991) (finding that the high level of sophistication of the parties' customers makes it "far less likely" that anyone would purchase one party's products believing the other party to be the source).

## INSTRUCTION #6

## LIKELIHOOD OF CONFUSION

In determining whether there is or will be a likelihood of confusion caused by the use of ~~similar terms by both plaintiff and defendant~~ [FORSLEAN by Sabinsa and FORSTHIN by Creative Compounds],~~you may draw on your common experience as citizens of the community~~ in addition to the general knowledge you have acquired throughout your lifetimes, you may also consider:

[1.   The similarity of the marks;

2.   The strength of the owner's mark;

3.   The price of the goods and other factors indicative of the care and attention expected of [ordinary purchasers] ~~consumers~~ when making a purchase;

4.   The length of time the defendant has used the mark without evidence of actual confusion;

5.   The intent of the defendant in adopting the mark;

6.   The evidence of actual confusion;

7.   Whether the goods are marketed or advertised through the same channels;

8.   The extent to which the targets of the parties' sales efforts are the same;

9.   The relationship of the goods in the minds of [ordinary purchasers]; and

10.  Other factors suggesting that the consuming public might expect the prior owner to manufacture both products, or manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.]

In light of these considerations~~and your common experience~~, you must determine if ordinary ~~consumers~~[purchasers of forskolin, being] neither overly careful nor overly careless, would be confused as to the origin of [Creative Compound's forskolin] upon encountering

the mark FORSTHIN as ~~the respective parties have~~ used ~~it~~ in connection with [that product].  No one factor or consideration is conclusive, but each aspect should be weighed in light of the total evidence presented at the trial.

O'Malley, Grenig & Lee, 3A Federal Jury Practice and Instructions § 159.25 (5th ed. 2001); *Interpace Corp. v. Lapp*, 721 F.2d 460, 463 (3d Cir.1983) (establishing Third Circuit's ten-factor test for likelihood of confusion); *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 470-71 (3d Cir. 2005)(endorsing the Third Circuit's *Lapp* factors); *800-JRCigar, Inc. v. GoTo.com, Inc.,* 437 F.Supp.2d 273, 285-86 (D.N.J. 2006) (endorsing the Third Circuit's *Lapp* factors.

## INSTRUCTION #7

## Similarity Of the Marks

[To evaluate similarity of the marks, you must compare the appearance, sound and meaning of the marks, as well as the manner in which they are used.

If the overall impression created by the defendant's trademark in the marketplace is similar to that created by the plaintiff's trademark in appearance, sound, or meaning, there **[PLAINTIFF: "is a greater" / DEFENDANT: "may be a greater chance of"]** likelihood of confusion.

You should not assess the similarity of the marks by using a side-by-side comparison.  Rather, you should inquire as to whether an ordinary ~~average consumer~~ [purchaser], on seeing one mark in isolation, and having only a general recollection of the other, would likely confuse or associate the two marks.

When making your final determination about the similarity of the marks, you must evaluate the impression of a mark in its entirety rather than on an evaluation of its different components.]

*Taj Mahal Enters., Ltd. v. Trump*, 745 F. Supp. 240 (D.N.J. 1990) (citing *Caesars World, Inc. v. Caesar's Palace*, 490 F. Supp. 818, 824 (D.N.J. 1980) (In evaluating similarity, the fact finder must "compare the appearance, sound and meaning of the marks, as well as the manner in which they are used.").  *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 477-78 (3d Cir. 1994) (holding that overall impression of marks must be determined by viewing marks in their entirety); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 477-78 (3d Cir. 1994) (holding that overall impression of marks must be determined by viewing marks in their entirety); *Kos Pharms., Inc. v. Andrix Corp.*, 369 F.3d 700, 713 (3d Cir. 2004) (stating that similarity of marks must be determined by examining sight, sound, and meaning of the two marks).

**INSTRUCTION #8**

**Strength of the Mark**

Trademark law protects distinctive or strong trademarks.  On the other hand, trademarks that are not as distinctive or strong are referred to as "weak" marks and receive less protection from infringing uses.  ~~Marks that are not distinctive are not entitled to any trademark protection.~~

When evaluating the strength of the FORSLEAN mark, you should consider:

1)  the conceptual distinctiveness of the mark; and

2)  the commercial strength or marketplace recognition of the mark.

O'Malley, Grenig & Lee, 3 A Federal Jury Practice and Instructions § 159.62 (5th ed. 2001); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 479 (3d Cir. 1994) ("Distinctiveness on the scale of trademarks is one measure of a mark's strength.  Commercial strength, or marketplace recognition of the mark, is another.").

## INSTRUCTION #9

## Conceptual Distinctiveness of a Trademark

Trademarks can be grouped into four categories according to their relative strength or distinctiveness. These four categories are, in order of their strength or distinctiveness:  arbitrary, suggestive, descriptive and generic trademarks.

The first category is arbitrary trademarks. Arbitrary trademarks are inherently distinctive.  They are considered strong trademarks and are clearly protectable.  Arbitrary trademarks involve the arbitrary, fanciful or fictitious use of a word to designate the source of a product.  An arbitrary trademark is a word that in no way describes the particular product it is meant to identify.  An arbitrary trademark may be a common word used in an unfamiliar way. An arbitrary trademark may be a newly created or coined word or parts of common words that are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark.

The second category of trademarks is suggestive trademarks.  These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks.  Unlike arbitrary trademarks, suggestive trademarks suggest some characteristic or quality of the product to which they are attached.  A suggestive use of a word involves consumers' associating the qualities the word suggests to the product to which the word is attached.

The third category of trademarks is descriptive trademarks.  These trademarks directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed.

The fourth category of marks is generic marks.  These marks are not entitled to any protection at all.  These marks are part of our common language that we use to identify all such similar products.  These generic marks are the common name for the products to which they are affixed.  [For example, the term "butter" is not entitled to protection as a trademark for butter because it is the generic name of the product].

O'Malley, Grenig & Lee, 3A Federal Jury Practice and
Instructions §§ 159.61, 159.62 (5th ed. 2001); *see also
Genovese Drug Stores, Inc. v. TGC Stores, Inc.*, 939 F.
Supp. 340, 346 (D.N.J. 1996) ("The relative strength of any
mark lies on a spectrum depending on whether the mark is
[1] generic, [2] descriptive, [3] suggestive, or [4]
arbitrary and fanciful."); *Genovese Drug Stores, Inc. v.
TGC Stores, Inc.*, 939 F. Supp. 340 (D.N.J. 1996) (stating
that suggestive and arbitrary marks "are deemed inherently
distinctive and are entitled to protection"; "[g]eneric
marks are never considered distinctive"; and "[d]escriptive
marks are also not inherently distinctive, but may acquire
secondary meaning that makes them distinctive"); *Buying for
the Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310,
318 (D.N.J. 2006) ("Marks that are suggestive, arbitrary,
or fanciful are considered inherently distinctive and are
entitled to protection.").

**INSTRUCTION #10**

**Commercial Strength of a Mark**

[A trademark's commercial strength is determined by considering two primary factors:

(1) the level of public awareness and recognition of the mark; and

(2) the steps a mark owner has taken to increase commercial and market awareness, including the amount of money spent on such efforts.]


*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 224 (3d Cir. 2000) (Although relevant to the commercial strength inquiry, "evidence of money spent does not automatically translate into consumer recognition.").

### INSTRUCTION #11

### Customer Care and Attention

The law provides that confusion **[Plaintiff: "may be less likely" / Defendant: "is unlikely"]** if the products or services being purchased are complex and expensive, the purchasers are highly sophisticated, and the purchase process one that is lengthy and requires close attention and analysis by the purchasers.

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 104 F. Supp. 2d 427, 460 (D.N.J. 2000), *aff'd*, 269 F.3d 270 (3d Cir. 2001) ("[T]he law provides that confusion is unlikely if the products or services at issue are complex and expensive, the purchasers highly sophisticated, and the purchase process one that is lengthy and requires close attention and analysis by the purchasers.").

<u>**INSTRUCTION #12**</u>

<u>**Defendant's Intent**</u>

When considering defendant Creative Compound's intent, you should evaluate whether it adopted the FORSTHIN mark with an intent to promote confusion **[Plaintiff: "or" / Defendant: "and"]** capitalize on Sabinsa's reputation and goodwill.


*Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 479-80 (3d Cir. 1994) (one factor relevant to likelihood of confusion is "whether the defendant adopted a mark with the intent of promoting confusion and appropriating the prior user's good will.").  *Savin Corp. v. Savin Group*, 391 F.3d 439, 460 (2d Cir. 2004) (This factor "'considers whether the defendant adopted its mark with the intention of capitalizing on [the] plaintiff's reputation and goodwill and [on] any confusion between his and the senior user's product.'")

## INSTRUCTION #13

## Actual Confusion

**[The parties propose alternative instructions.]**

## INSTRUCTION #14

### The Relationship of the Goods in the Minds of Purchasers

[In considering this factor, you should consider two important aspects:

(1) the similarity between the products sold under the marks; and

(2) the similarity between the products' sales contexts.

Increased similarity between the products or their sales contexts **[Plaintiff: "increases" / Defendant: "may increase"]** the likelihood of confusion.]


*Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983) ("The closer the relationship between the products, and the more similar their sales contexts, the greater the likelihood of confusion."); *Checkpoint Sys, Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 286 (3d Cir. 2001) (stating the relevant inquiry under this factor is "whether the goods are similar enough that a customer would assume they were offered by the same source.").

## INSTRUCTION #15

### Marketing/Advertising Channels

If the plaintiff's and defendant's goods are sold through the same channels of trade, or advertised in similar media, this **[Plaintiff: "increases" / Defendant: "may increase"]** the likelihood of confusion.


Ninth Circuit Model Jury Instruction 15.16(6); *Kos Pharms., Inc. v. Andrix Corp.*, 369 F.3d 700, 722 (3d Cir. 2004) ("[T]he greater the similarity in advertising and marketing campaigns, the greater the likelihood of confusion.").

## Instruction #16

### The Extent to Which the Targets
### of the Parties' Sales Efforts Are the Same


     If you find that the parties target their sales efforts to the same potential purchasers, there **[Plaintiff: "is" / Defendant "may be"]** a stronger likelihood of confusion.


*Checkpoint Sys, Inc. v. Check Point Software Techs.*, Inc., 269 F.3d 270, 289 (3d Cir. 2001) ("When parties target their sales efforts to the same consumers, there is a stronger likelihood of confusion.").

## Instruction #17

### Actual Damages for Infringement of Registered Trademark

If you find for plaintiff Sabinsa on plaintiff's infringement claim, you must [then] determine [whether plaintiff suffered any damages from the infringement].~~plaintiff's damages.~~ Plaintiff has the burden of proving damages by a preponderance of the evidence.

Damages means the amount of money that will reasonably and fairly compensate plaintiff for any injury ~~[and]/[or] [property damage]~~ you find was ~~[proximately]/[legally]~~ caused by the defendant's infringement of the plaintiff's registered trademark. You should consider whether any of the following exists, and if so to what extent, in determining plaintiff's damages:

1. Any injury to the plaintiff's reputation;

2. Any injury to plaintiff's goodwill, including any injury to the plaintiff's general business reputation;

3. Any loss of plaintiff's sales as a result of the defendant's infringement;

4. Any loss of plaintiff's profits;

5. Any expense of preventing customers from being deceived;

6. Any cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement; and

7. Any other factors that bear on plaintiff's actual damages.

When considering damages, you must not over compensate. Any award of such future costs should not exceed the actual damage to the value of plaintiff's mark at the time of the infringement by defendant.

O'Malley, Grenig & Lee, 3A Federal Jury Practice and
Instructions §§ 159.91 (5th ed. 2001); *see also* 15 U.S.C.
§ 1117(a) (violation of a registrant's mark entitles
registrant to recover (1) defendant's profits, (2) any
damages sustained by the plaintiff, and (3) the costs of
the action).

<u>**Instruction #18**</u>

<u>**Defendant's Profits**</u>


If you find for plaintiff Sabinsa, **[Defendant: "Sabinsa is not automatically entitled to an award of profits.  Rather,"]** you should determine whether fairness requires that Creative Compounds pay to Sabinsa the profits, if any, attributable to Creative Compounds' use of the FORSTHIN mark.  You should determine whether awarding Creative Compounds' profits to Sabinsa would be fair in light of:

  1. Whether Creative Compounds had the intent to deceive;

  2. Whether sales have been diverted;

  3. The adequacy of other remedies to compensate Sabinsa for any harm it suffered due to Creative Compounds' use of the FORSTHIN mark;

  4. Any unreasonable delay by Sabinsa in asserting its rights; and

  5. The public interest in making the misconduct uprofitable; and

  6. Whether this is a case of "palming off" (that is, whether Creative Compounds misrepresented its goods as being Sabinsa's goods).


*Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (citing *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002)  *Dastar Corporation v. Twentieth Century Fox Film Corporation*, 539 U.S. 23, 27 at n.1 (2003) ("Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's.").

## Instruction #19

## Profits

~~In addition to actual damages,~~ [If you determine that] plaintiff is entitled to any profits earned by defendant that are attributable to the infringement, ~~. However,~~ you may not include in [the] award of profits any amount that you included in determining actual damages.

Defendant has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed trademark by a preponderance of the evidence.  Expenses ~~are~~ [include] all overhead and production costs incurred in producing the gross revenue.

Unless you find that a portion of the profit from defendant Creative Compounds' sale of forskolin using the FORSTHIN trademark is attributable to factors other than use of the trademark, you must find that the total profit is attributable to the infringement.


O'Malley, Grenig & Lee, 3A Federal Jury Practice and Instructions §§ 159.92 (5th ed. 2001); *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 171 (3d Cir. 2005) (holding that "willfulness is an important equitable factor but not a prerequisite" to an award of the infringer's profits and listing factors to consider); *Id*. (defendant has burden of proof regarding costs and deductions related to its profits and can deduct those costs directly related).

**Instruction #20**

**Intentional Infringement**

If you find that defendant has infringed the plaintiff's trademark, you must also determine whether defendant acted with culpable conduct, meaning bad faith, fraud, malice, or knowing infringement.

O'Malley, Grenig & Lee, 3A Federal Jury Practice and Instructions §§ 159.93 (5th ed. 2001); *see also Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir. 2000) ("[C]ulpable conduct on the part of the losing party", meaning "bad faith, fraud, malice, or knowing infringement," is required before a case can meet the standards of being an "exceptional case under § 35(a)"); *Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 332 (D.N.J. 2006) (agreeing with *Securacomm Consulting, Inc.* that to qualify as an exceptional case and allow for an award of attorneys' fees, the court must find "culpable conduct" on the part of the infringing party).

## **Sabinsa's Proposed Instruction #6A**

### **Initial Interest Confusion**

[A likelihood of confusion can be found based upon confusion that creates initial customer interest in a defendant's product, even if no actual sale is completed as a result of the confusion.]

*Checkpoint Systems, Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 292 (3d Cir. 2001) ("[Trademark infringement] can be based upon confusion that creates initial customer interest, even though no actual sale is finally completed as a result of the confusion.").

## **Sabinsa's Proposed Additions to Instruction #7**

In finding whether the marks are similar, similarities in appearance, sound, or meaning weigh more heavily than differences.  The likelihood of confusion is increased where two marks share a dominant feature such as the first word or syllable.

You are not required to give more or less weight to any factor you evaluate when considering whether a likelihood of confusion exists.  Nevertheless, if you find

1) that the FORSLEAN and FORSTHIN marks are similar, and

2) that plaintiff and defendant Creative Compounds compete directly in selling their forskolin products,

greater weight may be given to these factors.

*Country Floors, Inc. v. P'ship of Gepner and Ford*, 930 F.2d 1056, 1065 (3d Cir. 1991) ("When the dominant portions of the two marks are the same, confusion is likely."). *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216 (3d Cir. 2000) (stating that side-by-side comparison is improper when evaluating similarity of marks, and further, that "[w]here the trademark owner and the alleged infringer deal in competing goods or services, the court need rarely look beyond the mark itself."); *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 713 (3d Cir. 2004) ("Where the goods ... are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products.") (quoting 3 McCarthy, § 23:20.1).

## **Sabinsa's Proposed Addition to Instruction #9**

The parties in this case agree that Sabinsa's trademark FORSLEAN is not descriptive or generic.  In evaluating the strength of plaintiff Sabinsa's trademark, you must consider its relative strength within one of the other two categories.

## **Sabinsa's Proposed Addition to Instruction #10**

The commercial strength of a mark increases with the strength of each of these factors.

### Sabinsa's Proposed Addition to Instruction #11

Nevertheless, the level of care exercised by consumers does not weigh more heavily than obvious similarities between the marks in sight, sound or meaning.

Also, customer sophistication does not diminish the likelihood of "initial interest" confusion.

*Kos Pharms., Inc. v. Andrix Corp.*, 369 F.3d 700, 716-17 (3d Cir. 2004) (stating that high standards of care do not weigh more heavily than "obvious similarity in derivation, suggestiveness, spelling, and sound in careless pronunciation" between two marks, and stating further that "expertise in the field of trademarks cannot be inferred from expertise in another area."); *SecuraComm Consulting, Inc. v. SecuraCom Inc.*, 984 F. Supp. 286, 299 (D.N.J. 1992) (citing McCarthy § 23:6) (emphasis added), *rev'd on other grounds*, 166 F.3d 182 (3d Cir. 1999) ("Because actual sales to the wrong party are not necessary for a finding of a likelihood of initial interest confusion, such confusion typically defeats the sophisticated purchaser defense.").

## Sabinsa's Proposed #13

~~If use by the defendant of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion.  However, a~~ [A]ctual confusion is not required for a finding of likelihood of confusion.  Even if actual confusion did not occur, the defendant's use of the trademark may still be likely to cause confusion. ~~As you consider whether the trademark used by Creative Compounds creates for consumers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion.  If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion.  If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.~~


Ninth Circuit Model Instruction 15.16; *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) ("Proof of actual confusion is not necessary; likelihood is all that need be shown."); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 476 (3d Cir. 1994)("while evidence of actual confusion would strengthen plaintiff's case, it is not essential.").

## CREATIVE COMPOUNDS' PROPOSED ADDITIONAL INSTRUCTION #3A

### CAUSATION

Plaintiff [Sabinsa] contends that defendant [Creative Compounds] has infringed plaintiff's trademark.  Plaintiff [Sabinsa] has the burden of proving by a preponderance of the evidence that plaintiff is the owner of a valid trademark and that defendant Creative Compounds infringed that trademark.


[The parties do not dispute that Sabinsa owns valid trademark rights in the mark FORSLEAN.  What they dispute is the issue of infringement.]


O'Malley, Grenig & Lee, 3 A FEDERAL JURY PRACTICE AND INSTRUCTIONS § 159.60 (5th ed. 2001).

## CREATIVE COMPOUNDS' PROPOSED ADDITION TO INSTRUCTION #7

### Similarity Of the Marks

Where the only common element of parties' marks is a generic term, such similarity is generally insufficient to cause likelihood of confusion because the generic matter is not likely to be understood by the public as an indication of common affiliation or trade identity, but rather is likely to be viewed as indicative or characteristic of the products.

Descriptive or generic components of a mark have little or no source identifying significance and generally are recessive and less significant in the likelihood of confusion analysis.  Where the common element of parties' marks is a word with a well-known meaning among the relevant customers, relatively slight differences in sound or appearance can suffice to eliminate a risk of confusion.

*Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 205 (D.N.J. 1993) ("If the only common element in marks is a generic term, such similarity is generally insufficient to cause likelihood of confusion because the generic matter is not likely to be understood by the public as an indication of common affiliation or trade identity, but rather is likely to be viewed as indicative or characteristic of the products.").  *John Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983) ("[A]lthough the marks ultimately must be considered as a whole, the focus of the inquiry regarding appearance and sound is on the non-generic portion."); *see also Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352 (7th Cir. 1983) (affirming finding of no likelihood of confusion where only common element of parties' MIRACLE WHIP and YOGOWHIP marks was the descriptor "whip"); *Dawn Donut Co., Inc. v. Day*, 450 F.2d 332, 333 (10th Cir. 1972) (no likelihood of confusion despite common use of "donut" in marks DAWN DONUT and DAYLIGHT DONUTS).

## CREATIVE COMPOUNDS' PROPOSED ADDITION TO INSTRUCTION #9

### Conceptual Distinctiveness

If [a] ~~the~~ term answers the question "what is the product being sold?" the term is generic.  If the average relevant ~~consumer~~ [customer] would identify the term with all such similar products, regardless of the manufacturer or provider, the term is generic and not entitled to protection as a trademark.  [For example, the term "butter" is not entitled to protection as a trademark for butter because it is the generic name of the goods.]

If you determine [that the FORSLEAN] mark is weak because it is suggestive or descriptive, you must consider the recognition that the mark has among prospective purchasers.  This market recognition is called the mark's "secondary meaning."  If a suggestive mark has such secondary meaning, it becomes stronger.  If it has developed no secondary meaning, it remains a weak mark.

~~Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning by the public coming to associate the mark with a particular source.  Descriptive marks are entitled to a protection only as broad as the secondary meaning they have acquired, if any.  If they have not acquired any secondary meaning, they are not entitled to protection.~~

O'Malley, Grenig & Lee, 3A Federal Jury Practice and Instructions §§ 159.61, 159.62 (5th ed. 2001); *see also Genovese Drug Stores, Inc. v. TGC Stores, Inc.*, 939 F. Supp. 340, 346 (D.N.J. 1996) ("The relative strength of any mark lies on a spectrum depending on whether the mark is [1] generic, [2] descriptive, [3] suggestive, or [4] arbitrary and fanciful."); *Genovese Drug Stores, Inc. v. TGC Stores, Inc.*, 939 F. Supp. 340 (D.N.J. 1996) (stating that suggestive and arbitrary marks "are deemed inherently distinctive and are entitled to protection"; "[g]eneric marks are never considered distinctive"; and "[d]escriptive marks are also not inherently distinctive, but may acquire secondary meaning that makes them distinctive"); *Buying for the Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 318 (D.N.J. 2006) ("Marks that are suggestive, arbitrary, or fanciful are considered inherently distinctive and are entitled to protection.").

## CREATIVE COMPOUNDS' PROPOSED ADDITION TO INSTRUCTION #10

### Commercial Strength

Evidence of money spent does not automatically translate into consumer recognition.

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 224 (3d Cir. 2000) (Although relevant to the commercial strength inquiry, "evidence of money spent does not automatically translate into consumer recognition.").

## CREATIVE COMPOUNDS' PROPOSED ADDITIONAL INSTRUCTION #11A

### PRICE OF THE GOODS

When goods are expensive, customers take more care in making their purchasing decisions and are therefore less likely to be confused.


*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 284 (3d Cir. 2001) (citing *Versa Prods. Co., Inc. v. Bifold Co. (Mfg) Ltd.*, 50 F.3d 189, 204 (3d Cir. 1995 ) ("Inexpensive goods require consumers to exercise less care in their selection than expensive ones."); *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 293 (3d Cir. 1991); *Prince Mfg., Inc. v. Bard Int'l Assoc., Inc.*, No. 88-3816 (CSF), 1998 WL 142407 (D.N.J. Dec. 22, 1988).

<u>**CREATIVE COMPOUNDS' PROPOSED ADDITIONAL INSTRUCTION #11B**</u>

<u>**PROFESSIONAL OR COMMERCIAL BUYERS**</u>

Where the relevant buyer class is composed of professionals or commercial buyers familiar with the field, they are sophisticated enough not to be confused by trademarks that are closely similar. That is, it is assumed that such professional buyers are less likely to be confused than the ordinary person.

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 284 (3d Cir. 2001) (quoting 3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS § 23:101); *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 293 (3d Cir. 1991) ("Professional buyers, or consumers of very expensive goods, will be held to a higher standard of care."); *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 128 (4th Cir. 1990) ("In a market with extremely sophisticated buyers, the likelihood of consumer confusion cannot be presumed on the basis of the similarity in trade name alone."); *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 173-74 (5th Cir. 1986) (business purchasers of expensive products not likely to confuse goods with similar marks).

## <u>CREATIVE COMPOUNDS' PROPOSED ADDITION TO INSTRUCTION # 10</u>

Failure to perform an official trademark search does not, in and of itself, prove that a defendant acted in bad faith.

Prior knowledge of a senior user's trademark is not inconsistent with good faith.

Where there is no likelihood of confusion, defendant's intent in adopting its mark is irrelevant.

*Savin Corp. v. Savin Group*, 391 F.3d 439, 460 (2d Cir. 2004) (Failure to perform an official trademark search does not, in and of itself, prove that a defendant acted in bad faith.)(citing *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 746 (2d Cir. 1998)).  *Savin Corp. v. Savin Group*, 391 F.3d 439, 460 (2d Cir. 2004) (Prior knowledge of a senior user's trademark is not inconsistent with good faith.) (citing *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 397 (2d Cir. 1995)).  *Versa Prods. Co., Inc. v. Bifold Co. (Mfg) Ltd.*, 50 F.3d 189, 205 (3d Cir. 1995)(A "defendant's bare intent to adopt a mark" is not probative of likelihood of confusion "since there is little basis in fact or logic for supposing from a defendant's intent to copy (without more) that the defendant's actions will in fact result in confusion."); *see also Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Lecoultre Watches, Inc.*, 221 F.2d 464 (2d Cir. 1955) (Where there is no likelihood of confusion, "an alleged infringer's intent becomes irrelevant, since an intent to do a wrong cannot transmute a lawful into an unlawful act.")

## CREATIVE COMPOUNDS' PROPOSED INSTRUCTION #13

### Actual Confusion

Actual confusion is not required for a finding of likelihood of confusion.  However, where a defendant's product has been sold for an appreciable period of time without evidence of actual confusion, one can infer that there is no likelihood of confusion.  The longer defendant's product has been sold, the stronger this inference will be.

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 291 (3d Cir. 2001) ("If a defendant's product has been sold for an appreciable period of time without evidence of actual confusion, one can infer that continued marketing will not lead to consumer confusion in the future. The longer the challenged product has been in use, the stronger this inference will be.") (*quoting Versa Prods. Co. v. Bifold Co.*, 50 F.3d 189, 205 (3d Cir. 1995)); *Barre-Nat'l, Inc. v. Barr Labs., Inc.*, 773 F. Supp. 735, 744 (D.N.J. 1991) (Lack of actual confusion "weighs heavily against a finding of likelihood of confusion."); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 476 (3d Cir. 1994) ("[W]hen parties have used similar marks for a sufficient period of time without evidence of consumer confusion about the source of the products, there is an inference that future consumers will not be confused either.").

## CREATIVE COMPOUNDS' PROPOSED ADDITIONAL INSTRUCTION #13A

### CONFUSION SURVEY

A plaintiff's failure to conduct a survey on the issue of likelihood of confusion, particularly when plaintiff is financially able to do so, may justify an inference that the plaintiff believes the results of the survey will be unfavorable.

*Charles Jacquin et Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 475 (3d Cir. 1990); *see also Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 583 (D.N.J. 1985); *Tyco Indus., Inc. v. Lego Sys. Inc.*, No. 84-3201 (GEB), 1987 WL 44363, 1987 U.S. Dist. LEXIS 13193 (D.N.J. Aug. 26, 1987), *aff'd*, 853 F.2d 921 (3d Cir. 1988).

## CREATIVE COMPOUNDS' PROPOSED ADDITIONAL INSTRUCTION # 17A

### MONETARY DAMAGES

If you find for plaintiff Sabinsa on plaintiff's infringement claim, you should determine whether Sabinsa is entitled to an award of monetary damages.  Even if you find that Creative Compounds has infringed Sabinsa's trademark rights, if you find that Creative Compounds acted in good faith in claiming ownership of the FORSTHIN mark, and that the case involves complex and difficult factual and legal issues, you may find that an injunction is a sufficient remedy and you may refuse to grant monetary damages to Sabinsa.


5 J. Thomas Mc Carthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:62 (4th Ed. 2006) ("Even though a defendant loses the case, if it is found that it acted in good faith in claiming ownership and the case involves complex and difficult factual and legal issues, an injunction may suffice, and profits or damages may be refused.)(citing *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686 (2d Cir. 1970), *cert denied*, 403 U.S. 905 (1971)).