**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

SABINSA CORPORATION,    :
                       :
        Plaintiff,    :        Hon. Dennis M. Cavanaugh
                       :
      v.          :        **OPINION**
                       :
                       :        Civil Action No: 04-4239 (DMC)
CREATIVE COMPOUNDS, LLC,  :
                       :
       Defendant.    :
_____:

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter is again before this court following a reversal and remand by the Court of Appeals for the Third Circuit, decided before Circuit Judges Roth and Ambro and District Judge Fischer, sitting by designation. In reversing and remanding, the Third Circuit instructed this Court to enter judgment in favor of Sabinsa Corporation on its trademark infringement and unfair competition claims and for other proceedings not inconsistent with the opinion. Plaintiff Sabinsa presently seeks damages for Creative Compounds' trademark infringement and unfair competition under a theory of disgorgement of profits as well as attorneys' fees pursuant to the Lanham Act and/or New Jersey state law.

      The underlying undisputed facts are more fully explained in Sabinsa Corp. v. Creative Compounds, LLC, 609 F.3d 175, 180-82 (3d Cir. 2010). This Court will provide additional facts pertinent to the present claims where necessary.

**DISCUSSION**

      A. Lanham Act - Accounting of Profits

The Lanham Act provides that subject to the principles of equity, a plaintiff shall be entitled to recover (1) defendant's profits; (2) any damages sustained by the plaintiff, and (3) the costs of the action.  15 U.S.C. §1117(a).   "An accounting of profits is a form of equitable relief, and it does not follow as a matter of course upon the mere showing of an infringement." A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197 (3d Cir. 1999) (quoting Williamson-Dickie Mfg. v. Davis Mfg., 251 F.2d 924 (3d Cir. 1958));  Gucci America, Inc. v. Daffy's Inc., 354 F.3d 228, 243 (3d Cir. 2003).  To determine whether the equities of the case warrant an award of money damages by disgorgement of profits, the Third Circuit considers various factors in its analysis which include, but are not limited to:

> (1) whether the defendant had the intent to confuse or deceive,
> (2) whether sales have been diverted,
> (3) the adequacy of other remedies,
> (4) any unreasonable delay by the plaintiff in asserting his rights,
> (5) the public interest in making the misconduct unprofitable, and
> (6) whether it is a case of palming off.

Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 175 (3d Cir. 2005).  This Court will consider each of these factors in determining whether Plaintiff is entitled to recover for damages.

### *(1) Whether Creative Compounds had the Intent to Confuse or Deceive*

In its Sabinsa decision, the Third Circuit stated that there were disputed factual issues on the question of Creative Compounds' intent in adopting the Forsthin mark.  Namely, there were issues pertaining to Creative Compounds' efforts in conducting a trademark search prior to its adoption of the Forsthin mark, as well as whether Creative Compounds' conducted research to expand on Sabinsa's patent. There were also issues pertaining to whether Creative Compounds' advertising was intentionally misleading in order to trade on Sabinsa's goodwill, and whether the

2

Forsthin mark was aimed at purchasers of Sabinsa's ForsLean product.

The Third Circuit found this Court's finding on the question of intent in its analysis of the Lapp factors to be improperly conclusory.[1] The Circuit court was unable to hold that it favors either party as a matter of law. See Sabinsa, 609 F.3d at 187-88. The task, then, is for this Court to determine if Creative Compounds had the intent to confuse or deceive.

Sabinsa argues that if Creative Compounds knew of its ForsLean mark prior to adopting the Forsthin mark, and failed to conduct an adequate trademark search, that would show Creative Compounds had a clear intent to confuse or deceive. Creative Compounds does not dispute that it was aware of Sabinsa's ForsLean mark prior to adopting the Forsthin mark. While the testimony describing the thoroughness of the trademark search conducted by Creative Compounds prior to its adoption of the Forsthin mark is somewhat inconsistent,[2] any such search would have confirmed what Creative Compounds already knew - that Sabinsa had trademarked the ForsLean mark for its forskohlin product. Although the knowledge and care Creative

---

[1] In reaching its decision on the question of infringement, and finding in favor of Creative Compounds, this Court found the testimony offered from the witnesses from Creative Compounds during the three day bench trial to be credible. See Sabinsa Corp. v. Creative Compounds, LLC, No. 2-04-cv-04239 (D.N.J. June 16, 2008).

[2] The Court also notes that there appeared to be some inconsistency in Creative Compounds' testimony where the President and CEO, Gary Haynes, stated that Creative Compounds does not have scientists or Ph.Ds on its staff (although it does have a consultant on staff) and does not engage in research and development. See Tr. 289:23 - 290:12 [Haynes]. However, Creative Compounds had filed a patent application entitled "Psychostimulant Effects of Forskolin Including Anorexia" in September 2003, which purported to build off of the Sabinsa patent through its own testing. See Ex. P74. The inventors listed on this application were Creative Compounds' consultant and Mr. Haynes. Although this seeming inconsistency does affect the view of Mr. Haynes' testimony, this Court deems Creative Compounds' personnel's testimony credible overall. See supra, n.2. Further, this patent application is evidence that Creative Compounds was attempting and intending to further distinguish the purpose of the usage of its product from Sabinsa's.

3

Compounds used to investigate and evaluate its proposed marks and the knowledge of similar marks are "highly relevant" to a finding of an intent to confuse or deceive,[3] it does not automatically lead to a conclusion that Defendant had the intent to confuse or deceive. See, e.g., R. J. Ants, Inc. v. Marinelli Enters., LLC, — F. Supp. 2d —, 2011 WL 611809, at *16-17 (E.D. Pa.. Feb. 18, 2011).   Mere knowledge of the ForsLean mark is insufficient to prove bad faith on the part of Creative Compounds. See M.D. On-line, Inc. v. WEBMD Corp., 2005 WL 2469668, at *8 (D.N.J. Oct. 6, 2005).

Sabinsa also argues that Creative Compounds' advertising of the Forsthin product was intended to trade on its goodwill and confuse customers as to the source of its product.  The Court does not agree.  Creative Compounds' name and contact information appear on its advertisements.  Further, there are other products marketed by Creative Compounds in the advertisements presented that consumers may know of as belonging to Creative Compounds, or at the very least not sold by Sabinsa.  Any customer who may still be unaware of the differences after observing the advertisements would still have to use Creative Compounds' information as found in the advertisement to contact them and order the product, where they would be told of the difference between the products and uses between Forsthin and Sabinsa's product. See Tr. 232:5-233:2 [Haynes].

Sabinsa also argues that Creative Compounds' Forsthin name was aimed at Sabinsa's ForsLean mark.  Creative Compounds states that it lacked any intent to confuse or deceive and that it had a subjective "bona fide belief" that it acted in good faith by following its preexisting

---

[3] See Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 721 (3d Cir. 2004).

4

naming strategy for its line of weight loss products in creating the Forsthin name.[4]

Sabinsa states that Creative Compounds did not follow its preexisting naming strategy for its "thin" line of weight loss products when creating the Forsthin mark, as Creative Compounds repeats the "thin" suffix consistently with an abbreviation of the first word of the active ingredient or plant ingredient.[5]  Sabinsa argues that the "Forsthin" mark skips the first name of the Coleus forskohlii plant it derives from, and instead abbreviates the second word. Sabinsa's argument is incorrect.  In all of the products noted, the abbreviated word combined with "thin" is not the plant name itself, but that of the chemical extract.  As the Third Circuit noted, the parties to this case use "fors" as an abbreviation for forskohlin.  Sabinsa, 609 F.3d at 186.  Thus "fors" is the abbreviation for the chemical extract, and not of the plant Coleus forskohlii.[6]  Creative Compounds' submissions support this conclusion.  It is part of the name of the chemical, not the plant, that is combined with the "thin" ending to create the name of the

_____

[4] Creative Compounds states that two of its marks from the "thin" line of products were adopted approximately a year and a half prior to the adoption of its "Forsthin" mark.

[5] Sabinsa states that the "thin" line of Creative Compounds' products includes Simthin (containing Simmondsin from the Simmondsia chinensis plant), Catethin (containing Catechins), Evothin (containing Evodiamine from the Evodia plant family), and Lumathin (containing Carulluma from the Caralluma fimbriata plant).

[6] The Court finds it necessary to clarify a statement in its previous opinion that the "fors" in ForsLean and Forsthin "is apparently an abbreviation of the generic term of the product, Coleus forskohlii."  In fact, the "Fors" portion of the marks are in reference to the extract forskohlin (the product sold by Sabinsa and Creative Compounds), and not the Coleus forskohlii plant itself.  Indeed as stated, the Third Circuit's opinion clarifies that the parties are using the "fors" abbreviation for forskohlin. See Sabinsa, 609 F.3d at 181,186.  It should also be noted that both parties have identified the "fors" in ForsLean/Forsthin as deriving from either the plant name or the chemical extract/active ingredient at various times in this litigation.  As stated above, the most consistent reading, and the one most often offered by the parties and the courts, seems to be that "fors" is the abbreviation for the extract forskohlin.

forskohlin product in Creative Compounds' weight loss line of products.  Therefore, Creative

Compounds was in fact following its preexisting naming strategy and did not deviate from it in

making the Forsthin mark.[7]

Concerning the question of intent, this case is factually distinct from the question of

intent in  Kos Pharmaceuticals, Inc. v. Andrx Corporation, where the Third Circuit determined

that the defendant's ALTOCOR mark infringed on plaintiff's ADVICOR mark. 369 F.3d 700 (3d

Cir. 2004).  In determining the defendant's intent in adopting its mark (concerning the question

of infringement), the Kos court noted that the issue was in plaintiff's favor because the defendant

made a "deliberate decision to use a name dangerously close to that of a competing drug, with no

apparent reason for choosing an arbitrary mark so similar to its competitor's and despite being

warned of the confusing similarity." Id. at 725.  The court stated that the defendant's use of the

infringing mark was "at least reckless, at worst a deliberate appropriation of the goodwill . . .

generated." Id. at 721-22.

In this case, it is true that Sabinsa's "ForsLean" "is not a term that was created

completely out of whole cloth." Sabinsa, 609 F.3d at 186.  It is also true that Creative

Compounds did have legitimate reasons for creating the "Forsthin" mark, as described above.

These reasons, unlike in Kos, were not arbitrary, and importantly do not appear to include the

intent to confuse or deceive.

_____

[7] The Court places great weight on the preexisting naming strategy (as well as Creative
Compound's adherence to it), and the fact that at least some other products were marked using
the same strategy prior to the creation of the Forsthin mark (such as Catethin and Simthin).  See
Tr. 219:20-222:21 [Haynes].  Had there been no such naming strategy, a different outcome may
be warranted, as it would appear more likely that Creative Compounds' mark was intentionally
aimed at Sabinsa's.

6

While, as previously noted,  there is some concern regarding the thoroughness of Creative Compounds' trademark search (which, again, would list the ForsLean mark that Creative Compounds was already aware of), the overall evidence on the question of intent leads to the conclusion that Creative Compounds did not have the requisite intent to confuse or deceive.  This factor weighs in favor of Creative Compounds, and thus against disgorgement of profits.  Although this court does not find that Creative Compounds had the intent to confuse or deceive, willfulness is not a prerequisite finding for recovery under a theory of disgorgement, but must be considered together with the other factors described in Banjo Buddies.

### (2) Whether there was a Diversion of Sales

The second factor to consider is whether there have been any diversion of the plaintiff's sales due to the infringing mark.   Diversion can be shown by evidence of instances of actual confusion.  However, the mere fact that the plaintiff can not show actual confusion will not defeat an accounting. Williamson-Dickie Mfg. v. Davis Mfg., 251 F.2d 924, 927 (3d Cir. 1958).  See Banjo Buddies, 399 F.3d at 175-76 (finding that district court did not abuse its discretion in ordering an accounting of profits because, in part, it is likely that defendant's conduct diverted sales based on material similarities of packaging and marketing schemes, even though no actual confusion was shown).

"In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant's must prove all elements of cost or deduction claimed." 15 U.S.C. §1117(a).  Plaintiff would only be entitled to recover for the diversion of sales, based on Defendant's profits, the amount demonstrably attributable to the unlawful use of his mark. See Mishawaka Rubber &

7

Woolen Mfg. v. S.S. Kresge Co., 316 U.S. 203, 206 (1942).   Defendant has the burden of proof

to demonstrate, if it can, that its profits were not derived from the infringing use. Williamson-

Dickie Mfg., 251 F.2d at 927.  It is Defendant's burden to show that "the infringement had no

relation to profits made by the Defendant, that some purchasers bought goods bearing the

infringing mark because of the Defendant's recommendation or his reputation or for any other

reason other than a response to the diffused appeal of plaintiff's symbol." Mishawaka Rubber &

Woolen Mfg., 316 U.S. at 206.  But see A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.,

2002 WL 27735, * 5 (E.D. Pa. Jan. 9, 2002)("We think that it would be unfair to award Plaintiffs

a share of the profits when there is no indication that Plaintiff's mark contributed to these profits

at all.")

   Creative Compounds alleges that Plaintiff was not able to show actual confusion, and

thus the issue of diversion of sales should lean in its favor.  This is a misreading of the law.

Plaintiff has the burden of proving actual confusion (and thus the existence of actual damages), if

it can, in the original claim for trademark infringement.[8]  If Plaintiff is successful on its

infringement claim, however, the burden then shifts to Defendant to show that its profits were

not derived from the infringing use.

   In the present case, "[i]t is undisputed that ForsLean and Forsthin had co-existed for

approximately three-and-a-half years at the time of trial without any evidence of actual

confusion.  Moreover, Sabinsa failed to submit survey evidence concerning actual confusion."

See Sabinsa, 609 F.3d at 187.  In fact, Sabinsa repeatedly represented to this court that it had no

---

   [8] However in many cases, including the present one, a Plaintiff need not show actual
confusion to be successful on its infringement claim, but merely a likelihood of confusion. See
Sabinsa, 609 F.3d at 187.

proof of actual confusion.[9]  Creative Compounds' total stipulated profits for the sale of Forsthin

is $158,747.78. See Pl.'s Br. in Support of its Motion for Damages and for Attorneys' Fees at 11.

Thus, Sabinsa has shown that sales of Forsthin were indeed made.

It is not enough that Plaintiff could not show actual damages in its infringement

claim, because a successful infringement claim leads to a presumption of diversion.  See

Mishawaka Rubber & Woolen Mfg., 316 U.S. at 206-07; Williamson-Dickie Mfg., 251 F.2d at

927.  Although this Court shares Judge Ambro's concern in his concurring Opinion in Sabinsa.

that Plaintiff could not make a showing of actual confusion, it is now Defendant's burden to

prove that there was in fact no confusion, or only in some circumstances, to show that its profits

were not derived from the infringing use.  It is not enough to say Plaintiff did not present

evidence of confusion; Defendant must itself present evidence that the customers were not

actually confused.  Creative Compounds could have conducted a customer survey, or because of

the small number of customers it claims purchased Forsthin, received evidence from a larger

sample that there was no actual confusion in purchasing its product (that is by showing that

---

[9] This court echoes the concern expressed in Judge Ambro's concurring opinion that Sabinsa offered no evidence of actual confusion and that was especially concerning where it could have easily conducted a survey of customers to assess actual confusion in the relevant market.  This could allow the court to "reasonably infer that Sabinsa expected that any survey results would undermine its case." Sabinsa, 609 F.3d at 190 (Ambro, J., concurring).  It would be expected that a company would gather such evidence in an infringement claim, especially where, as here, the product to be protected generates such large revenues for the company.  Judge Ambro's observation seems especially poignant where, as in the present case, there was a small, finite, and identifiable amount of customers that purchased Forsthin from Creative Compounds during the three-and-a-half year period in question, and Sabinsa could afford to do such a survey.  See, e.g., Eagle Snacks, Inc. v. Nabisco Brands, Inc., 625 F. Supp. 571, 583 (D.N.J. 1985)("Failure of a trademark owner to run a survey to support its claim[] of . . . likelihood of confusion, where it has the financial means of doing so, may give rise to the inference that the contents of the survey would be unfavorable, and may result in the court denying relief.").

customers who purchased Forsthin meant to purchase Forsthin ,i.e., that they did not want to nor attempted to purchase ForsLean).  Creative Compounds did not make such a showing.[10] Likewise, Creative Compounds did not prove deductions from the gross receipts.   The law of this Circuit does not put the burden on Sabinsa to show a diversion of sales to receive disgorgement, and thus this factor must go against Creative Compounds.[11]  See, e.g., Banjo Buddies, 399 F.3d at 175 (stating that "it is likely that [Defendant]'s conduct diverted sales from Banjo Buddies" when concluding that the District Court did not abuse its discretion in ordering an accounting of profits, although no actual damages were shown by Banjo Buddies).

### (3) Adequacy of Other Remedies

Creative Compounds argues that a permanent injunction would be an adequate remedy.  Sabinsa counters, stating that a permanent injunction alone is inadequate because it allows Creative Compounds to have profited from its infringement.

---

[10] Neither Sabinsa, in its original infringement claim, nor Creative Compounds, in the present action, presented evidence of confusion (or the general lack thereof) from the larger customer class, as determined by the Third Circuit - the general consumer who read a ForsLean pamphlet and chose to buy a pharmaceutical containing forskholin.  See Sabinsa, 609 F.3d at 186-87.  Since no survey was conducted for any of the consumers in question - the more identifiable and finite customers who deal in pharmaceuticals or the less readily identifiable and less finite general consumers - this must go against Creative Compounds on the issue of damages.

[11] This Court does however credit the testimony of Mr. Mark Olson, the President of a common customer to both Sabinsa and Creative Compounds, who has testified that neither he nor anyone at his company had mistaken the two products for the other.  Therefore, any award of Creative Compound's profits would have from it subtracted the profits earned from sales to Mr. Olson and his company, as Defendant has satisfied the court that such sales were not derived from the infringing use.  The stipulated profits of $158,747.78 from the sale of Forsthin is approximately 26.25% of the total amount of the sales on the invoice found in Plaintiff's Ex. 67.  Using this percentage, the Court finds that the profits derived from the sale of Forsthin to Mr. Olson's company totaling $73,750.00 is $19,359.38. That amount need not be disgorged.

"In determining whether to grant a permanent injunction, a court must consider: '(1) the moving party's success on the merits; (2) the probability of irreparable injury to the moving party in the absence of relief; (3) the potential harm to the non-moving party; and, if applicable, (4) the public interest.'" La Cena Fine Foods, Ltd. v. Jennifer Fine Foods, 2006 WL 2014503, at * 7 (D.N.J. July 18, 2006) (quoting Church & Dwight Co., Inc. v. S.C. Johnson & Sons, Inc., 873 F. Supp. 893, 903 (D.N.J. 1994)); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

In the present case, Sabinsa was successful on the merits on its claims of trademark infringement and unfair competition.  Further, Sabinsa has previously successfully demonstrated a likelihood of confusion.  See Sabinsa, 609 F.3d 175 (3d Cir. 2010).  A finding of a likelihood of confusion supports the conclusion that there was an irreparable injury to the plaintiff.  See Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 196-97 (3d Cir. 1990); see also Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City, 383 F.3d 110, 125 (3d Cir. 2004) (stating that the Third Circuit holds that "trademark infringement amounts to irreparable injury as a matter of law")(citations and quotations omitted).   There is little, if any, potential harm to Creative Compounds by issuing an injunction.  Indeed since the decision of the Third Circuit was issued, Creative Compounds has ceased using the Forsthin mark.  Finally, to the extent that any harm may have been suffered by Sabinsa, an injunction would prevent any such possibility from arising in the future.  There would be no question that Sabinsa's future customers would not be confused (i.e. no instances of "actual confusion" will arise in the future), and thus Sabinsa would suffer no harm, if an injunction is granted.   See Kos Pharms., 369 F.3d at 730 (stating that the public interest question in Lanham Act cases is "the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy").   Further, other

remedies would not prevent Creative Compounds from any future trademark infringement using the Forsthin mark,[12] and any such future damages for Sabinsa would be difficult to determine. A permanent injunction would therefore be both proper and an adequate remedy in this case. See, e.g., Champion Spark Plugs, Co. v. Sanders, 331 U.S. 225 (1947)(declining to award an accounting, finding that an injunction would satisfy the equities of the case, where the court found no showing of fraud or palming off).

### (4) Whether There was Unreasonable Delay by Sabinsa in Asserting its Rights

Sabinsa did not delay in asserting its rights and this factor weighs in its favor. However, the court will not weigh this factor heavily simply based on Sabinsa asserting its rights in a timely manner. Had Sabinsa not, however, this Court might have assigned greater weight to this factor in favor of Creative Compounds. See, e.g., Marshak v. Treadwell, 2008 WL 413312, *8-9 (D.N.J. Feb. 13, 2008)(denying an accounting of past profits in a trademark infringement claim, even though several Banjo Buddies factors weighed in its favor, where plaintiff had an inordinate delay by waiting five years to file the action after discovering the possible infringement).

### (5) The Public Interest in Making the Misconduct Unprofitable

In its analysis, a Court must remember that "the trademark laws are designed to protect not only the trademark owner but the consuming public as well." Robert Bruce, Inc. v.

---

[12] This is not to say that Creative Compounds would use the Forsthin brand in the future without the court issuing an injunction, only that it conceivably could.

12

Sears, Roebuck & Co., 343 F. Supp. 1333, 1349 (D.C. Pa. 1972).  It is thus appropriate to

consider whether there is public interest in making Creative Compound's  misconduct

unprofitable.

It is obvious there would be a great public interest in making misconduct unprofitable

where there is culpable conduct on the part of the infringer.  See, e.g., Banjo Buddies, 399 F.3d at

175-76 (stating that although the question of intent is neutral, the public has an interest in

discouraging behavior that likely diverts sales and is deemed "palming off"); Darius Intern., Inc.

v. Young, 2008 WL 1820945, at *52-53 (E.D. Pa. Apr. 23, 2008) (stating the public interest in

not being deceived weighs in plaintiff's favor where defendants had intent to confuse/deceive

with similar packaging and color schemes, sales were diverted, and there were some instances of

palming off).  It is less obvious what the level of public interest is in making misconduct

unprofitable for an infringer who did not have such culpable intent.  Certainly if the public

interest would be to make all misconduct unprofitable, irrespective of the infringer's conduct,

this consideration would place an equally strong weight in favor of disgorging the infringer's

profits.  That is, the public would always demand an award of profits in every case of

infringement.  This Court does not view the public interest in that light.  To do so would directly

conflict with the principle that an accounting of profits is a form of equitable relief that is not

given as a matter of course upon the mere showing of an infringement.  Further, any such award

would be an improper punishment, and not a fair compensation.  See 15 U.S.C. §1117(a).

Instead, there must be some middle area where the weight of the public interest in making the

misconduct unprofitable should be considered in relation to the specific facts of each case.  That

is, the more culpable the conduct of the infringer, the more the public should be interested in

making the conduct unprofitable.  This is not to say that infringers without such culpable conduct should always escape consideration of the public's interest when dealing with the question of disgorgement, but only that they should not necessarily be treated on the same level as an infringer who had demonstrated intent to infringe.

The public can be satisfied by protecting the trademark holder by way of an injunction, while not levying a punishment against an innocent infringer.  An injunction itself could protect the consuming public in many instances.

Here, Creative Compounds' did not possess the requisite malicious intent, nor, as discussed below, was it engaged in palming off.  The public may very well be satisfied with an injunction alone with regards to an innocent infringer.  However, as previously stated, each factor can not be considered alone and must be weighed against the other <u>Banjo Buddies</u> factors.


*(6) Whether Creative Compounds was Engaged in Palming Off*

"Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's."  <u>Darius Intern., Inc. v. Young</u>, 2008 WL 1820945, *52, n.42 (E.D. Pa. Apr. 23, 2008) (quoting <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 28 n.1 (2003)).

While both Sabinsa and Creative Compounds are raw material suppliers who sell forskholin to be used in other products through the same channels, Creative Compounds was not engaged in palming off.  As described above, Creative Compounds did not have the requisite intent to confuse or deceive others, making them believe its product to be Sabinsa's.  Creative Compounds instructed those who wanted to purchase Forsthin of its intended use should they

14

choose to purchase from them, and that they should purchase from Sabinsa is their purpose was to promote lean body mass.  Further, a majority of the Forsthin customers were repeat customers or those who otherwise bought products from Creative Compounds.  See Tr.  229: 4-7, 14-15 [Haynes]; Pl.'s Ex. 67.  These repeat customers would more likely than not know from whom and what they were buying and quite likely might have contacted a particular salesperson at a particular company about a particular product on multiple occasions.  This court thus finds that Creative Compounds was not misrepresenting Forsthin as Sabinsa's product.

### *Weighing the Banjo Buddies Factors*

As previously stated, these factors should be weighed together and a Court must be mindful that an accounting of profits does not follow as a matter of course just because an infringement is found.  Any damages awarded should only be a compensation to the party that had its mark infringed, and should not be awarded merely to serve as a punishment to the infringing party.  See 15 U.S.C. §1117(a).

Although five of the Banjo Buddies factors weigh against disgorgement, a sixth factor, whether there was a diversion of sales, favors the Plaintiff and in this case tips the scale towards partial disgorgement.  Defendant had the ability to show that Forsthin did not divert sales from Sabinsa's ForsLean, but did not (with the exception of the one common customer described above).  It is not enough for Creative Compounds to say that Sabinsa did not show confusion in the first instance in the original infringement claim.  Plaintiff need not have shown actual confusion to prevail in an infringement claim.  See Sabinsa, 609 F.3d at 187.  Nor does it need to show actual confusion to prevail in the claim for damages.  A  presumption of diversion

of sales arises after a Plaintiff prevails on its infringement claim, and as long as the Plaintiff can show that monies were obtained by Defendant from sales of the infringing product, the burden is on the Defendant to overcome this presumption.  Defendant must show proper deductions from any claim against its profits.  This means that under the law, Plaintiff need not show actual confusion. However, should Plaintiff succeed on its infringement claim, Defendant must offer evidence to prove the lack of actual confusion to overcome this presumption. The burden on Defendant is heavy, perhaps unduly so.

At one time, the question of "willfulness" would be a defense against the remedy of disgorgement to an innocent infringer who had not met the burden of showing  that there was, in fact, no diversion of sales. See SecuraComm Consulting, Inc. v. Securacom, Inc., 166 F.3d 182, 189-90 (3d Cir.1999).  The necessity of finding willfulness and/or diversion of profits helped protect innocent infringers from the heavy burden placed on them to prove a double negative, that they did not intend to infringe and did not profit from unintentional conduct. Indeed, as Creative Compounds shows, that is still the law in many circuits.  See Def.'s Br. in Opposition to Sabinas's Motion for Damages and Attorney's Fees, 5-6 (citing cases from Second, Seventh, Eighth, Tenth, and Federal Circuits).  However, that is no longer true in this Circuit.  See Banjo Buddies, 399 F.3d at 173-76.  It need not matter whether Creative Compounds was a willful infringer or not, because Plaintiff need not prove willfulness on the part of the infringer.  See id. at 175-76.  Where damages are concerned, a willful infringer is treated the same as an innocent infringer.  While this may seem to perversely give mark holders a free pass, and to treat infringement as if it were a strict liability crime without the need to show either malicious intent

16

or unjust enrichment, that is the law the court must uphold.[13]

       Thus it appears difficult for a defendant, innocent or not, to defend himself in a claim for disgorgement of profits.  To succeed on such a claim, Plaintiff need not show actual confusion or willfulness on the part of Defendant (indeed, in this case, Sabinsa did neither).  Defendant, though, must itself now show that its profits were not derived from the infringing use, even after it proves that its  infringement was innocent.[14]  Creative Compounds has the burden to show in fact that confusion was not responsible for certain (or all) of its profits - that these profits were not derived from the infringing use.

       This Court is mindful that the equities of the case should be considered.  The Court is additionally mindful that in this case an innocent infringer is being disgorged of profits that may not in fact have been derived from the infringing use.  Although  an injunction alone may well have been sufficient, See Champion Spark Plugs, 331 U.S. at 131-32; Bracco Diagnostics, Inc. v. Amersham Health, Inc.,  627 F. Supp. 2d 384, 485-86 (D.N.J. 2009) (false advertising claim), because a likelihood of confusion exists, and a presumption of a diversion of sales arises, and because Creative Compounds failed to overcome such a presumption, regardless of its intent, this Court is constrained to concluding that Creative Compounds profits must be disgorged.  Therefore, this Court must disgorge Creative Compounds of its profits from its sale of Forsthin,

---

[13] In considering the question of attorney's fees, however, such considerations may still be very important in the court's analysis.  See Part B, infra.

[14] A customer survey can lead to such a showing.  Although a Plaintiff need not conduct any such survey (or show any actual confusion) to succeed in infringement or damages claim, a Defendant would seemingly always have to conduct such a survey, should the court find infringement, to limit any claim for damages by disgorgement.  If the Plaintiff does conduct a survey, two surveys may then be presented to the court.

minus the profits attained from the sale of Forsthin to Mr. Olson's company (which the Court

determines to be in the amount of $19,359.38 (see n.12, supra)), in the amount of $139,388.40.

B.  Attorneys' Fees

*(1) Lanham Act*

Pursuant to the Lanham Act, in exceptional cases, the court may award attorneys' fees

to the prevailing party in an infringement action.  15 U.S.C. §1117(a).  Determining whether a

case is exceptional is a two-step process. Green v. Fornario, 486 F.3d 100, 103 (3d Cir. 2007).

First the court must decide if the non-prevailing party was engaged in the requisite culpable

conduct.  Id.  A case is considered exceptional where there is culpable conduct on the part of the

losing party, such as bad faith, fraud, malice, or knowing infringement. Ferrero U.S.A., Inc. v.

Ozak Trading, Inc., 952 F.2d 44, 47 (3d Cir. 1991) Plaintiff bears the burden of proving such

culpable conduct.  Green, 486 F.3d at 104. Conduct during litigation may also warrant a fee

award under this provision. See Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273,

279-83 (3d Cir. 2000).   If culpable conduct is found, the Court will then move to step two,

deciding whether the "circumstances are 'exceptional' enough to warrant a fee." Green, 486 F.3d

at 103 (citing Ferrero).  Thus, to award fees under the Lanham Act, the District Court must first

find  culpable conduct, but it may decline to award fees despite such a finding based on the

totality of the circumstances. Id. at 103-04.  See also Birthright v. Birthright Inc., 827 F. Supp.

1114, 1144 (D.N.J. 1993) ("The language of [15 U.S.C. §1117(a)], however, is permissive.  A

district court 'may,' but is not required to award reasonable attorneys' fees, even if the matter

before it is an exceptional case.").

18

In this case, Sabinsa does not make any allegations of bad faith, fraud, or malice, nor does the Court find evidence to support any such finding.  Sabinsa does argue that Creative Compounds knowingly infringed its mark and that Creative Compounds' culpable conduct constitutes an exceptional case to award fees under the Lanham Act.

Although the standard needed to find a case exceptional has not yet to have been determined by the Third Circuit, many District Courts in this Circuit, following the lead of other Circuits, state that successful parties in an infringement suit must show "exceptionability" by clear and convincing evidence to recover fees under the Lanham Act.  See, e.g., U.S. Olympic Comm. v. Tobyhanna Camp Corp., 2010 WL 4617429, at *6, n.4 (M.D. Pa. Nov. 4, 2010); Louis Vuitton Malletier, SA v. Mosseri, 2009 WL 3633882, at * 4 (D.N.J. Oct. 28, 2009); N.V.E., Inc. v. Day, 2009 WL 252677, at *5 (D.N.J. Aug. 18, 2009); Callaway Golf Co. v. Slazenger, 384 F. Supp. 2d 735, 747-48 (D. Del. 2005).  Sabinsa's offered evidence of wilfulness, taken as a whole, falls below the level of clear and convincing (see discussion Part A, infra).

Even if Sabinsa had shown the requisite culpable conduct on the part of Creative Compounds, the Court would still not deem this case exceptional and would thus decline to award fees under the totality of circumstances of this case.  The circumstances of this case are not exceptional enough to warrant a fee; nothing in the parties' actions prior to the instant case nor during the litigation itself would dictate otherwise.

*(2) New Jersey State Law*

Plaintiff states that it is entitled to recover reasonable attorneys' fees under New

Jersey law in the context of common law trademark and unfair competition rights.  Prevailing

parties may be awarded reasonable attorneys' fees under New Jersey law even where they are

denied under statute by the Lanham Act.[15]  See Salton Inc. v. Cornwall Corp., 477 F. Supp. 975,

992 n.11 (D.N.J. 1979).  That is because there need not be showing of culpable conduct as is

required under the federal statute. Id.

The Supreme Court of New Jersey first recognized an award of attorneys' fees in Red

Devil Tools v. Tip Top Brush Co., 236 A.2d 861 (N.J. 1967).  In Red Devil Tools, the plaintiff

was a manufacturer of a line of painters' and glaziers' tools under the well-known trademark

"Red Devil" (Plaintiff however did not manufacture paint brushes).   Defendant was a

corporation who manufactured and sold paint brushes under a "Red Devil" name. The evidence

showed that these products were distributed in the same channels of trade and sold to the same

customers, that Defendants did not designate their brush as different from Plaintiff's "Red Devil"

line, and that there was actual confusion.  The Court then stated:

> [The Red Devil] name was an arbitrary one which had no descriptive significance
> and when the defendants deliberately chose it, from the almost unlimited number of
> arbitrary names available, they invited the resulting confusion, undoubtedly seeking,
> as the Chancery Division found, to benefit from the plaintiff's established reputation.
> Surely in this day equity will not hesitate to restrain shenanigans of this sort.

236 A.2d at 864.  The Court, in considering the equities of that particular case, awarded an

injunction plus reasonable attorneys' fees.

In Salton Inc. v. Cornwall Corp., the Court denied statutory attorneys' fees under the

---

[15] Prevailing parties may also be entitled to attorneys' fees under both the Lanham Act
and New Jersey law.  See, e.g., Bagdasarian Prods. v. Audiofidelity Enters., Inc., 1984 WL 1565,
at *11 (D.N.J. Oct. 3, 1984).

Lanham Act, as the defendant's conduct was not "fraudulent," "deliberate," willful," or "malicious," and it is therefore not an exceptional case under the Lanham Act.  477 F. Supp. 975, 992 (D.N.J. 1979).  However, citing <u>Red Devil</u>, the Court awarded attorneys' fees under New Jersey state law.  <u>Id.</u> at 992-93.  Although the Court did not find actual damages or injury, it had determined that the defendant's usage was directed only at the plaintiff's term, which it deemed descriptive.  <u>Id.</u> at 983-84, 985-87.  Further, the Court found that the defendants had clear interest in palming off its product as that of plaintiff.  <u>Id.</u> at 983.  The Court also found that the defendants knew they were using a name long associated with another, that a deterrent purpose would be served in awarding fees, and that an award of fees would take care of plaintiff's costs in pursuing this action.  <u>Id.</u> at 992.

The present case is distinguishable from the <u>Red Devil</u> and <u>Salton</u> line of cases.   The award was given in <u>Red Devil</u> because defendants "knew what they were about when they deliberately chose to market their paint brushes under an arbitrary name long and favorably associated with another in the field."  <u>Red Devil</u>, 236 A.2d at 868.  As stated above, Creative Compounds arrived at the Forsthin name through a pre-existing naming strategy.   The award for litigation costs in <u>Red Devil</u>  was a substitute for "an ill-suited and burdensome accounting." In the present case any accounting would not be burdensome as the parties have stipulated the net profits of the Forsthin mark and the number of Forsthin customers is relatively small.  The Court was able to calculate the amount of profits to be awarded based on the evidence presented. Finally, the <u>Red Devil</u> court used the award of attorneys' fees as a deterrent against future infringement.  In the present case, a deterrent is unnecessary as the infringement was innocent and any such award would not prevent future innocent infringements.  An award of fees may

21

prevent future willful infringement, but awarding fees against an innocent infringer just to guard against the possibility of future willful infringement is an untenable position.[16]  Thus the Court is not presented with similar facts as those that were before the New Jersey Supreme Court in Red Devil. There is no reason to extend that holding to the present case.

        There is also another distinction worth noting.  In Red Devil, the mark that was protected was an arbitrary one.  In the present case, the mark is a suggestive mark.  See Sabinsa, 609 F.3d at 186.  It appears that the arbitrariness of the mark in Red Devil was a key consideration in the court's finding for the plaintiff and awarding litigation fees.  See Edison Elec. Co., Inc. v. Edison Contracting Co., 203 N.J. Super. 50, at 56, 495 A.2d 905 (Ch. Div. 1985) ("By noting in passing that the names were arbitrary, the Court implied that different results would have been reached if the names had been descriptive.")(citing Red Devil).  Thus, it is conceivable that under New Jersey law, a suggestive mark, such as found in the present case, would not be afforded the same level of protection as an arbitrary mark, even though both would be protected against infringement, when considering the question of an award of attorneys' fees.[17]

_____

        [16]  If the opposite was true, attorneys' fees would always need to be awarded in an effort to deter some possible future infringement and therefore the equities of the case would never be considered. This court does not view the law in that way.

        [17]  To receive protection under the Lanham Act,"a mark must either be suggestive, arbitrary, or fanciful, or must be descriptive with a demonstration of a secondary meaning." A & H Sportswear, Inc., 166 F.3d at 222.  "The conceptual strength of a mark is measured by classifying the mark in one of four categories ranging from the strongest to the weakest: '(1) arbitrary or fanciful (such as "KODAK"); (2) suggestive (such as "COPPERTONE"); (3) descriptive ("such as "SECURITY CENTER"), and (4) generic (such as "DIET CHOCOLATE SODA FUDGE").'" Freedom Card Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 472 (3d Cir. 2005) (quoting A & H Sportswear, Inc., 166 F.3d at 221).  "Stronger marks receive greater protection." Id.; see also Trademark Office Trademark Manual of Examining Procedure, Section 1207.01(b)(ix) ("It is well established that the scope of protection afforded merely descriptive or even a highly suggestive term is less than that accorded an arbitrary or coined mark.)(quoting In

22

The <u>Salton</u> court also ruled on key facts that are different from the present case. While the defendant in <u>Salton</u> did not commit fraudulent, deliberate, willful, or malicious actions requisite for an award of fees under the Lanham Act, its usage was purposefully directed at plaintiff's term and it had clear interest in palming off.  In the present case, as explained above, the actions of Defendant can not be described as fraudulent, deliberate, willful, or malicious, nor can it be said that Creative Compounds was palming off.

New Jersey's state law is not read to award attorneys' fees in every successful infringement action.  Had the law been read otherwise, no analysis of the equities would have been necessary in <u>Red Devil</u>, <u>Salton</u>, or other similar cases, but instead an award would have automatically been given once an infringement was found.  Therefore an analysis of the equities must be what is called for.

In the present case, as discussed above, Creative Compounds' did not possess the intent to deceive or to palm off, nor is there a deterrent purpose to be served that would require the awarding of attorneys' fees.  The equities of this case call for an injunction and the law calls for a partial disgorgement of profits.  An award of attorneys' fees, however,  is not called for, and is not proper in this case.  Accordingly, Plaintiff's motion for attorneys' fees is denied.

---

re: Hunke & Jochheim, 185 U.S.P.Q. 188, 189 (T.T.A.B. 1975)).  Similarly, New Jersey has also appeared to recognize a greater degree of protection for some marks as compared to others. <u>See</u> <u>Edison Elec. Co., Inc. v. Edison Contracting Co.</u>, 203 N.J.Super. 50, at 56, 495 A.2d 905 (Ch. Div. 1985) ("It appears that New Jersey, consistent with the prevailing view throughout the country, recognizes a greater degree of protection for purely arbitrary trade names than for those which are descriptive in nature."); <u>American Home Mortg. Corp. v. American Home Mortg. Corp.</u>, 357 N.J.Super. 273, 279-80, 814 A.2d 1165 (App. Div. 2003) (citing <u>id</u>.).

**IV.**     **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's motion for disgorgement of profits is **granted** in the amount of $139, 388.40, and Plaintiff's motion for attorney's fees is **denied.** An appropriate order follows this opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date          July  2 5 , 2011
cc:           all Counsel of Record
              The Honorable Joseph A. Dickson, U.S.M.J.
              File

24